IN THE CIRCUIT COURT OF THE 9TH
JUDICIAL CIRCUIT, IN AND FOR
ORANGE COUNTY, FLORIDA

KEITH ABLOW CREATIVE, INC.

    Plaintiff,

CASE NO.:

vs.

DOCSCONNECT LLC, a dissolved Florida
corporation

    Defendant.

_____/

## COMPLAINT

Plaintiff sues Defendant and states:

### GENERAL ALLEGATIONS

1. This is an action for damages that exceeds $15,000.00.

2. Defendant is a dissolved Florida corporation which maintained its principal place of business in Orange County.

3. Plaintiff is a corporation.

### COUNT I

### BREACH OF CONTRACT

4. Plaintiff re-alleges and incorporates each and every allegation as contained in Paragraphs 1 through 3 herein.

5. On or about January 1, 2019 Defendant entered into an Independent Contractor Agreement ("Agreement") with Plaintiff, whereby Plaintiff agreed to provide professional services to Defendant who agreed to pay the balance due for services rendered. A copy of the contract is

attached hereto as Exhibit B.

6. Defendant owes Plaintiff $272,500.00 plus pre-judgment interest since July 24, 2019 according to the invoice attached as Exhibit A.

7. Defendant breached the contract by failing to make payment when due as set forth in Exhibit A.

8. Plaintiff has been damaged in the amount of $272,500.00.

9. All conditions precedent to bringing this action have been performed, waived or have occurred.

WHEREFORE, Plaintiff demands judgment against Defendant in the amount of $272,500.00 plus pre-judgment interest since July 24, 2019 and court costs and for such further relief as this Court deems proper.

## COUNT II

### ACCOUNT STATED

10. Plaintiff re-alleges and incorporates each and every allegation as contained in Paragraphs 1 through 3 herein.

11. Before the institution of this action Plaintiff and Defendant had business transactions between them and agreed to the resulting balance.

12. Plaintiff rendered invoice to Defendant who did not object to the invoice.

13. Defendant owes Plaintiff $272,500.00 plus pre-judgment interest since July 24, 2019 on the account.

14. All conditions precedent to bringing this action have been performed, waived or have occurred.

WHEREFORE, Plaintiff demands judgment against Defendant in the amount of $272,500.00 plus pre-judgment interest since July 24, 2019 and court costs and for such further relief as this Court deems proper.

## COUNT III

### UNJUST ENRICHMENT

15. Plaintiff re-alleges and incorporates each and every allegation as contained in Paragraphs 1 through 3 herein.

16. The Plaintiff has conferred a benefit on the Defendant who has knowledge thereof.

17. The Defendant voluntarily accepted and retained the benefit conferred.

18. The circumstances are such that it would be inequitable for the Defendant to retain the benefit without paying the value thereof in the amount of $272,500.00 to the Plaintiff.

19. All conditions precedent to bringing this action have been performed, waived or have occurred.

WHEREFORE, Plaintiff demands judgment against Defendant in the amount of $272,500.00 plus pre-judgment interest since July 24, 2019 and court costs and for such further relief as this Court deems proper.

Nathan A. Schwartz, P.A.
5255 North Federal Highway
Suite 305
Boca Raton, Florida  33487
Telephone (561) 347-8376
Fax (561) 347-8396
E-mail: attyschwartz@yahoo.com
       servicenas@yahoo.com

By:___/s/ Nathan A. Schwartz_____
    Nathan A. Schwartz
    FL Bar No. 511528

# KEITH ABLOW

36 Water Street
Newburyport, MA 01950

**INVOICE**

Invoice No.: 1147
Invoice Date: 24 July 2019
Due Date: UPON RECEIPT

**BILL TO:**
DocsConnect

| DESCRIPTION | AMOUNT |
|---|---|
| January Fee | $7,500.00 |
| Payment Remitted To Keith Ablow | -$7,500.00 |
| February Fee - PAST DUE | $12,500.00 |
| March Fee - PAST DUE | $20,000.00 |
| April Fee - PAST DUE | $20,000.00 |
| May Fee - PAST DUE | $20,000.00 |
| June Fee - PAST DUE | $20,000.00 |
| July Fee - PAST DUE | $20,000.00 |
| August | $20,000.00 |
| September | $20,000.00 |
| October | $20,000.00 |
| Contract Termination | $80,000.00 |

TOTAL $272,500.00

Remit payment Upon Receipt

Checks payable to KEITH ABLOW

Exhibit A

# *INDEPENDENT CONTRACTOR AGREEMENT*

This Independent Contractor Agreement (this "Agreement") is made effective as of January 1, 2019, by and between DocsConnect, LLC (the "Recipient"), of 1990 K Street NW, Suite 5R, Washington, D.C., 20006 and Keith Ablow Creative, Inc. (the "Contractor"), of 36 Water Street, Newburyport, Massachusetts 01950. In this Agreement, the party who is contracting to receive the services shall be referred to as "Recipient", and the party who will be providing the services shall be referred to as "Contractor."

**1. DESCRIPTION OF SERVICES.** Beginning on January 1, 2019, the Contractor will provide the following services through Dr. Keith Ablow, Individually ( Behavioral Health Spokesman) (collectively, the "Services"):

Company Spokesman over Integrated Behavioral Health Home & Virtual Behavioral Health Visits:

(i) Collaborate with DocsConnect to build integrated behavioral health home

(ii) Develop material for presentations and training to organizations and providers for DocsConnect Behavioral Health Program .

(iii) Development of algorithms for behavioral health.


**2. PAYMENT FOR SERVICES.** The Recipient will pay compensation to the Contractor for the Services. Payments will be made as follows:
  (a) $7,500 for January 2019
  (b) $12,500 for February 2019
  (c) $20,000 per month for the months of March 2019 through December 2019 and for every month in any subsequent year during renewal period.

Contractor shall invoice Recipient no later than the 1st day of the month in which the billed services are rendered. Recipient shall pay Contractor within 15 days after receipt of Contractor's invoice by wire transfer or ACH.

At any point during January or February 2019, Recipient can elect to increase compensation to $20,000/month and receive 40 hours of Contractor's time during that month.

In addition to the payments set forth above, Contractor shall be entitled to receive an amount equal to 4% of the net proceeds of sale if Recipient is sold as a standalone company or an amount equal to 4% of net proceeds of sale if Recipient is sold as part of a roll up of multiple companies. Contractor shall be entitled to receive these amounts regardless of Recipient's election to terminate this agreement.

No other fees and/or expenses will be paid to the Contractor, unless such fees and/or expenses have been approved in advance by the appropriate executive on behalf of

Exhibit B

the Recipient in writing. The Contractor shall be solely responsible for any and all taxes, Social Security contributions or payments, disability insurance, unemployment taxes, and other payroll type taxes applicable to such compensation.

All work shall be performed remotely, and at the convenience of the Contractor. Should Recipient require Contractor's physical presence at a meeting, event, or engagement, Recipient shall be responsible for all costs associated with travel as well as any incidental expenses incurred by Contractor.

Commencing with March, 2019, Contractor and Recipient intend that Contractor will spend approximately 40 hours per month performing Services on an accrued basis. In the event that Services required by Recipient in any given month require Contractor to devote more than 40 hours of time in performance of said Services, and said hours exceed accrued but non performed accrued hours, Contractor shall notify Recipient by email in advance of exceeding 40-hour threshold and, Recipient shall pay Contractor $750 per hour for each hour in excess of 40 hours in that month.

3. **TERM/TERMINATION.** Termination of this agreement will occur as follows: Agreement will automatically renew on a yearly basis
A regular, ongoing relationship of indefinite term is not contemplated. The Recipient has no right to assign services to the Contractor other than as specifically contemplated by this Agreement. However, the parties may mutually agree that the Contractor shall perform other services for the Recipient, pursuant to the terms of this Agreement.

Either party may terminate this Agreement with 90 days written notice to the other party. Except for a default by Contractor or the death or disability of Keith Ablow, should Recipient terminate this Agreement within one year of its inception, Recipient shall pay Contractor a termination fee of $80,000.00 immediately upon notice of termination. The parties agree that this termination fee represents a fair and equitable exchange for the commitment of time and resources that Contractor has made as well as the opportunities that Contractor may need to forgo in the performance of Services. This termination fee shall be in addition to the equity

4. **RELATIONSHIP OF PARTIES.** It is understood by the parties that the Contractor is an independent contractor with respect to the Recipient, and not an employee of the Recipient. The Recipient will not provide fringe benefits, including health insurance benefits, paid vacation, or any other employee benefit, for the benefit of the Contractor.

It is contemplated that the relationship between the Contractor and the Recipient shall be a non- exclusive one. The Contractor also performs services for other organizations and/or individuals. The Recipient has no right to further inquire into the Contractor's other activities.

5. **RECIPIENT'S CONTROL.** The Recipient has no right or power to control or otherwise interfere with the Contractor's mode of effecting performance under this Agreement. The Recipient's only concern is the result of the Contractor's work, and not the means of accomplishing it. Except in extraordinary circumstances and when necessary, the Contractor shall perform the Services without direct supervision by the Recipient.

6. **PROFESSIONAL CAPACITY.** The Contractor is a professional who uses his or her own professional and business methods to perform services. The Contractor has not and will not receive training from the Recipient regarding how to perform the Services.

7. **PERSONAL SERVICES NOT REQUIRED.** The Contractor is not required to render the Services personally and may employ others to perform the Services on behalf of the Recipient without the Recipient's knowledge or consent. If the Contractor has assistants, it is the Contractor's responsibility to hire them and to provide materials for them.

8. **NO LOCATION ON PREMISES.** The Contractor has no desk or other equipment either located at or furnished by the Recipient. Except to the extent that the Contractor works in a territory as defined by the Recipient, his or her services are not integrated into the mainstream of the Recipient's business.

9. **NO SET WORK HOURS.** The Contractor has no set hours of work. There is no requirement that the Contractor work full time or otherwise account for work hours.

10. **EXPENSES PAID BY CONTRACTOR.** The Contractor's business and travel expenses are to be paid by the Contractor and not by the Recipient unless the Recipient requires the Contractor to travel or incur additional expenses in the performance of Services.

11. **OWNERSHIP OF SOCIAL MEDIA CONTACTS.** Any social media contacts, including "followers" or "friends," that are acquired through accounts (including, but not limited to email addresses, blogs, Twitter, Facebook, YouTube, or other social media networks) used or created on behalf of the Recipient are the property of the Contractor.

12. **CONFIDENTIALITY.** Contractor may have had access to proprietary, private and/or otherwise confidential information ("Confidential Information") of the Recipient. Confidential Information shall mean all non-public information which constitutes, relates or refers to the operation of the business of the Recipient, including without limitation, all financial, investment, operational, personnel, sales, marketing, managerial and statistical information of the Recipient, and any and all trade secrets, customer lists, or pricing information of the Recipient. The nature of the information and the manner of disclosure are such that a reasonable person would understand it to be confidential. The Contractor will not at any time or in any manner, either directly or indirectly, use for the personal benefit of the Contractor, or divulge, disclose, or communicate in any manner any Confidential Information. The Contractor will protect such information and treat the Confidential Information as strictly confidential. This provision shall continue to be

effective after the termination of this Agreement. Upon termination of this Agreement, the Contractor will return to the Recipient all Confidential Information, whether physical or electronic, and other items that

were used, created, or controlled by the Contractor during the term of this Agreement.

This Agreement is in compliance with the Defend Trade Secrets Act and provides civil or criminal immunity to any individual for the disclosure of trade secrets: (i) made in confidence to a federal, state, or local government official, or to an attorney when the disclosure is to report suspected violations of the law; or (ii) in a complaint or other document filed in a lawsuit if made under seal.

13. **NO RIGHT TO ACT AS AGENT.** An "employer-employee" or "principal-agent" relationship is not created merely because
(1) the Recipient has or retains the right to supervise or inspect the work as it progresses in order to ensure compliance with the terms of the contract or
(2) the Recipient has or retains the right to stop work done improperly. The Contractor has no right to act as an agent for the Recipient

14. **ENTIRE AGREEMENT.** This Agreement constitutes the entire contract between the parties. All terms and conditions contained in any other writings previously executed by the parties regarding the matters contemplated herein shall be deemed to be merged herein and superseded hereby. No modification of this Agreement shall be deemed effective unless in writing and signed by the parties hereto.

15. **WAIVER OF BREACH.** The waiver by the Recipient of a breach of any provision of this Agreement by Contractor shall not operate or be construed as a waiver of any subsequent breach by Contractor.

16. **SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

17. **APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of Florida.

18. **SIGNATORIES.** This Agreement shall be signed by DocsConnect, LLC and by Keith Ablow Creative, Inc.. This Agreement is effective as of the date first above written.

**RECIPIENT:**
DocsConnect, LLC

By: *Pamela R. Mathews*
PAMELA R MATHEWS
02/3/2019 pm

**CONTRACTOR:**
Keith Ablow Creative, Inc.

By: *[signature]*